IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01922-LTB

BRENDA ELLIOTT,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.
_____

ORDER
_____

      Plaintiff, Brenda Elliott, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and her application for supplement security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, and the record, I REVERSE the Commissioner's final order and REMAND for an award of benefits.

## I. STATEMENT OF THE CASE

      Plaintiff seeks judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. [Administrative Record ("AR") 47, 58,316 ] The applications were initially denied on March 23, 2005. [AR 30, 316] An Administrative Law Judge ("ALJ") subsequently conducted an evidentiary hearing and issued a written ruling on June 1, 2006, denying Plaintiff's applications on the basis that if she stopped her substance abuse, she would not be disabled in that her substance abuse disorder(s)

are a contributing factor material to the determination of disability under the Social Security Act pursuant to 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. §§ 404.1535, 416.935. [AR 14-29] On August 18, 2007, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 5-12] Plaintiff timely filed her complaint with this court on September 12, 2007, seeking review of the Commissioner's decision.

## II. FACTS

Plaintiff was born on March 14, 1958, and was 47-years-old at the time of her hearing with the ALJ. [AR 47, 58] Her relevant prior work history is as a security officer, a private investigator, a component processor, a graphic artist and a scientific photographer. [AR 75-82, 442] Plaintiff alleges that she became disabled and no longer able to work on February 2, 2004, because of bipolar disorder, obsessive compulsive disorder, thyroid cancer in remission, degenerative disc disease and degenerative joint disease. [AR 32, 90]

The evidence in the record reveals that Plaintiff has a long history of instability in her physical and mental health. This includes back surgery, thyroid cancer, and long-term alcohol and drug abuse, as well as various diagnosis for bipolar disorder, anxiety disorder, pain disorder, personality disorder, and chronic pain disorder. [AR 140, 163, 170, 188, 199, 250, 265] She has a history of numerous suicide attempts and was prosecuted for prescription falsification and shoplifting. [AR 186, 140, 159, 198]

The evidence in the record pertaining to Plaintiff's medical history from the time she alleges she became disabled on February 2, 2004, to the date she must establish a disability on September 30, 2005, is as follows.

On February 26, 2004, an L-spine examination/x-ray revealed an impression of degenerative disc and joint disease involving L5-S1. [AR 139]

In April, 2004, Plaintiff was seen at a Community Health Center for management of her chronic back pain. At that time the doctor adjusted her drug dosages in an attempt to manage her pain and mitigate her dependency. She was subsequently discharged from the clinic, on or about April 28, 2004, for allegedly attempting to alter a prescription for percocet. [AR 128-131]

During this time, on April 15, 2004, Plaintiff presented to her psychiatrist, Dr. James Spadoni, M.D., after she exhibited "recent apparent manic dyscontrol" related to a shoplifting incident. [AR 186] Also during this time, on May 13, 2004, Plaintiff reported to an endocrine clinic for continued treatment of her thyroid cancer. At that visit, she complained of fatigue and severe back pain. [AR 135-37]

Plaintiff was then admitted to Penrose/St. Francis Health Center on July 24, 2004, after a suicide attempt. Her principal diagnosis upon admittance was bipolar disorder, with an additional diagnosis of alcohol dependency. She was placed on a detoxification protocol for alcohol withdrawal. Upon discharge on July 26, 2004, Plaintiff was diagnosed with bipolar disorder – mixed, and alcohol dependence, as well as hypothyroidism and hypertension. Her Global Assessment of Functioning ("GAF") – which is a subjective determination based on a scale of 1-100 of the clinician's judgment of the individual's overall level of functioning as defined by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") – on admission was assessed at 21 and on discharge her GAF was assessed at 55. [AR 140-50]

Plaintiff began seeing a court-ordered counselor, Nancy A. Montville, M.A., LPC, on August 3, 2005. At her initial assessment, Plaintiff was diagnosed with Bipolar II disorder – depressed, and sedative, hypnotic or anxiolytic abuse. She reported a history of thyroid and back problems which led to vicodin use. Her GAF assessment at the time was 55. [AR 290-91] Plaintiff was then re-admitted to Penrose/St. Francis Health Center on the same day, after an episode of binge drinking. On intake she was diagnosed with alcohol dependence and bipolar disorder – depressed, and her GAF was assessed at 35. [AR 150-154]

Plaintiff was re-admitted to Penrose/St. Francis Health Center on November 16, 2004, via the emergency department, for suicide ideation and attempt by intentional overdose. [159-167] On both intake and discharge she was assessed with bipolar II disorder – depressed, alcohol depression in partial remission, hyperthroidism, hypertension, and chronic pain syndrome with degenerative disk and joint disease. Her GAF was assessed at 35 on admittance and at 40 on discharge on November 20, 2004. [AR 163, 160]

Plaintiff again presented to the emergency department at Penrose/St. Francis Health Center on December 2, 2004, seeking help for her increased depression. Her diagnosis on discharge was bipolar II disorder, pain disorder, and history of alcohol dependence, in partial remission, degenerative disc and joint disease of the spine, and a GAF at admission of 25 and at 45 at discharge on December 6, 2004. [AR 170-174]

By December 6, 2004, Plaintiff's psychiatrist, Dr. Spadoni, was concerned about Plaintiff's prescription drug use and her poor follow up; he assessed "[p]oor overall current function and of bipolar illness." Plaintiff was dismissed from his care on January 18, 2005, in order to receive care from a Medicare provider. [AR 182-86]

4

On January 29, 2005, Plaintiff was again admitted to Penrose/St. Francis Heath Center, for evaluation of her bipolar depression and her pain after she was unable to afford her medications. On discharge she was diagnosed with bipolar II disorder, alcohol dependent, opiate dependant, as well as status post cholecystectomy, hypertension, back pain, Cesarean section and thyroid cancer. Her GAF on admission was 25, and was 40 on discharge. [AR 188-196]

On February 20, 2005, Plaintiff again reported to Penrose/St. Francis Heath Center with increased suicide ideation, and was subsequently transferred to Pikes Peak Mental Health. There she admitted that "she was seeking pain killers and she only reported [suicide ideation] so she would be admitted." [AR 198, 203] Plaintiff was deemed to be "in need of detox from pain medications . . . [and] seems motivated to get pain medications only." Her final diagnosis was depressive disorder, NOS, and a GAF of 45. [AR 198-210] On March 14, 2005, Plaintiff went to the emergency room at Memorial Hospital complaining of left sided sciatica. [AR 307]

Plaintiff began treatment with Pike Peak Mental Health starting with an assessment dated March 1, 2005, by Cyndy Burroughs, MSW, SCIII. At that time she was assessed with Bipolar II disorder – depressed, opiad abuse, personality disorder – NOS, and a GAF of 55. [AR 250-257]

On May 3, 2005, Plaintiff followed up with Diane DeMallie, MD/DO, at Pikes Peak Mental Health and was diagnosed with bipolar II disorder, pain disorder, panic disorder, R/O benzodiazepine and opiate dependence, and personality disorder - NOS. [AR 265] She continued to see Dr. DeMallie approximately every six weeks through Pikes Peak Mental Health through November 3, 2005, when she was assessed with Bipolar II disorder, panic disorder, history of opiate dependence, personality disorder – NOS, chronic back pain, hyper-

5

cholestrolemia, and hyopthyrodism. [AR 260]

In a treatment summary, Plaintiff's court-ordered therapist, Nancy Montville, reported that Plaintiff had been in bi-weekly psychotherapy from May 2004 through June 2005, during which she showed a "genuine desire to learn coping skills for her diagnosis, Bi-Polar II Disorder." However, she "did not comply with substance abuse treatment recommendations," as her continued drug use was the only way she "could feel better." [AR 292]

On August 24, 2005, Plaintiff's physical examination was normal and a plain x-ray showed no major abnormalities after Plaintiff complained of bilateral, sciatica coursing pain worse in the intermittent afternoon and evening; limiting her ability to walk for 15 minutes, sitting and standing one hour. However, an MRI showed some degenerative disk disease with foraminal stenosis at 4-5 and 5-S1 and left sided helilaminectomy at S1. As a result, Plaintiff received epidural steroid injections. At follow up visit, Plaintiff reported the previous injections "eliminated her left lower extremity pain" but her back pain was more intense. As such, facet injections were prescribed. [AR 302-303]

After September 2005 – the date by which Plaintiff is required to establish disability – the medical record reveal numerous emergency room visits for anxiety, overdose and, primarily, pain. [AR 334, 344, 357, 365, 370, 396, 388, 381] It also reveals inpatient care at Cedar Springs Behavioral Health System in June of 2007. [AR 410]

In support of her applications at issue here, Plaintiff completed a personal pain questionnaire and a function report in March 2005, in which she stated that she lived with her husband and daughter; she spent most of her mornings in bed and watched television all day. [AR 65-74] Plaintiff indicated that she experienced constant, daily pain, and had difficulty

6

standing, walking, and concentrating. [AR 65, 72]  At her hearing, Plaintiff testified that she had constant pain that was not eliminated by treatment.  [AR 426-39]  She testified that she was anxious, suicidal and experienced major mood swings, as well as panic attacks, depression, and she had trouble sleeping. [AR 426-35]  She admitted to abusing alcohol and prescription drugs in an attempt to manage her pain. [AR 426-35]

Based on the primary diagnosis of Plaintiff's thyroidectomy/thyroid carcocin, secondary diagnosis of alcohol dependence and other alleged impairments of depression/affective disorder, and fibromyalgia, the single decision maker completed a Physical Residual Functional Capacity Assessment on March 21, 2005, and concluded that Plaintiff was capable of a medium physical residual functional capacity or "RFC."  [AR 211-218]  Colorado is one of ten states participating in a pilot program for streamlining the administrative review process, including use of an single decision maker ("SDM") to make the initial determination of disability.  A SDM has no medical credentials and thus his opinion is entitled to no weight.  *See Velasquez v. Astrue*, 2008 WL 791950, 3 (D. Colo. 2008).

Richard Garnand, M.D., a state agency psychiatrist, reviewed Plaintiff's records and completed a Psychological Review Technique Form and a related Mental Residual Functional Capacity Assessment on March 22, 2005.  [AR 219, 234]  Dr. Garnand opined that Plaintiff has the medically determinable impairments of depression and bipolar disorder. [AR 222]   In addition, Dr. Garnand assessed affective disorders of alcohol and opiate dependence in early partial remission.  [AR 227].   In determining Plaintiff's mental functioning, Dr. Garnand opined that she was moderately limited in ten areas of functioning, and not significantly limited in eight rated areas of functioning. [AR 234-35]  As such, Dr. Garnand concluded that "when sober and

7

compliant" with treatment and prescriptions, Plaintiff:

> would be capable of sustaining work needing little or no judgment involving single duties which can be learned on the job in a short period of time ([less than] 30 days)[;] can respond to supervisors and relate to co-workers if contact [was] not prolonged or frequent [and] minimal contact with general public. [AR 236]

At Plaintiff's request, Dr. DeMallie, her treating psychiatrist, completed a mental impairment questionnaire on November 22, 2005. [AR 310-15] Dr. DeMallie indicated a diagnosis of bipolar II disorder, panic disorder, pain disorder and history of opiate dependence. Dr. DeMallie did not fill out the portion of the form rating Plaintiff's specific areas of work-related functioning. However, she opined that Plaintiff would be unable to complete a normal workday and workweek without interruptions from psychologically based symptoms; she could not perform at a consistent pace without an unreasonable number and length of rest periods or unexcused absences greater than 2-3 per month; and she could not handle normal work stress. [AR 314]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

In addition, when there is medical evidence of a substance use disorder, if the substance use disorder is a contributing, material factor to the asserted disability, a claimant is not considered to be disabled under the Social Security Act. So, a claimant is not considered to be disabled, for Social Security purposes, if alcoholism or drug addiction is a contributing, material factor in determining that the individual would, except for this restriction, be disabled. *See* 42

U.S.C. § 423(d)(2)(C). In making this determination, the ALJ must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance abuse. If the remaining limitations would not be disabling, the substance abuse disorder constitutes a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535, 416.935.

## IV. ALJ's RULING

The ALJ here concluded that Plaintiff is under a disability, but that substance abuse disorders "is a contributing factor material to the determination of disability" and, as such, she was not disabled under the Social Security Act. [AR 17]

Initially, the ALJ ruled that Plaintiff met the insured status requirements of the Social Security Act from her alleged disability onset date of February 2, 2004, but that she continued to meet them only through September 30, 2005 and, as such, the ALJ ruled that Plaintiff "must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." [AR 16, 19]  The ALJ also ruled that Plaintiff had not engaged in substantial gainful activity at any relevant time (Step One). [AR 19]

The ALJ next determined that Plaintiff has the following severe impairments: degenerative disc and joint disease of the lumbar spine; a bipolar disorder; a pain disorder; an alcohol abuse disorder; and a sedative/benzodiazepine/opioid disorder (Step Two). [AR 19] However, the ALJ further determined that such impairments or combination of impairments did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 20] As a result, the ALJ went on conclude that:

10

> After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, when misusing her prescription medications and/or when abusing alcohol, the claimant lacks the ability to perform work at any exertional category, as she would be unable to maintain a schedule, regular attendance or punctuality within normal employer tolerances. [AR 21]

The ALJ likewise found that when engaging in substance abuse, the Plaintiff is unable to perform her past relevant work or any other jobs existing in significant numbers in the national economy (Steps Four and Five). Accordingly, the ALJ concluded that when abusing alcohol and prescription medications, a finding of disability as defined by the Social Security Act is appropriate. [AR 23] But, the ALJ went on to find that if Plaintiff stopped the substance abuse, she would have the RFC to:

> lift and carry 20 pounds occasionally and 10 pounds frequently with sitting, standing or walking for up to six hours during an eight-hour work day; with occasional stooping and crouching; and with a requirement to perform no more than unskilled work. [AR 23]

The ALJ concluded that even if Plaintiff stopped her substance abuse, she would continue to be unable to perform her past relevant work (Step Four). [AR 27] However, if Plaintiff stopped her substance abuse, the ALJ found that considering her age, education, work experience and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform (Step Five). [AR 28] As a result, because Plaintiff would not be disabled if she stopped her substance abuse, her substance abuse disorder(s) were "a contributing factor material to the determination of disability" and, thus, Plaintiff "has not been disabled within the meaning of the Social Security Act at any time through the date of this decision" pursuant to 20 C.F.R. § 404.1535 and § 416.935. [AR 29]

## V. STANDARD OF REVIEW

This court's review here is limited to whether the final decision is supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (citations omitted). Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

Because it is dispositive, I first address Plaintiff's claim that the ALJ erred in ruling that her substance abuse is a contributing factor to the disability determination and, as such, failed to properly assess her RFC if she were to stop abusing prescription drugs and alcohol.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(C); *see*

*also Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001). In order to make this determination, the SSA is required to "evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations would not be disabling, the drug addiction or alcoholism is a contributing factor material to the determination of disability and the claimant is not eligible for benefits; conversely, if the remaining limitations would be disabling, the claimant is eligible for benefits. 20 C.F.R. §§ 404.1535(b)(2)(i)&(ii), 416.935(b)(2)(i)&(ii).

In *Salazar v. Barnhart,* 468 F.3d 615, 623-24 (10th Cir. 2006), the Tenth Circuit reviewed the applicability of the SSA's drug and alcohol addiction ("DAA") regulations to claimants who have one or more other additional mental impairments. The Court specifically relied upon a teletype sent out by the SSA Commissioner on applying the law, which stressed "the need for careful examination of periods of abstinence" and, in addition, "directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is *not* a contributing factor material to the disability determination." *Id.* at 623 (emphasis in original). The Tenth Circuit quoted the teletype as follows:

> We know of no research data upon which to reliably predict the expected improvement in a coexisting mental impairment(s) should drug/alcohol use stop. The most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol. Of course, when evaluating this type of evidence consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence. When it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would

13

be appropriate.

*Id.* Thus, "the Commissioner's teletype further directs that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA is *not* a contributing factor material to the disability determination." *Id.*

The Court found that in the case before it, the ALJ's ruling did not mention the teletype and, moreover, that there was not substantial evidence to support the ALJ's conclusion that the claimant would not be disabled in the absence of her DAA. *Id.* at 624. "Therefore, whether we view the ALJ's error as misapplication of the law or the lack of substantial evidence, the result is the same and the decision must be reversed." *Id.* (*citing Hamlin v. Barnhart, supra*, 365 F.3d at 1214); *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). The *Salazar* court then reversed the district court and remanded with directions to remand to the SAA Commissioner for an immediate award of benefits. *Salazar v. Barnhart, supra,* 468 F.3d at 626.

When concluding that Plaintiff's mental functional limitations would allow her to perform simple work in the absence of her prescription drug and alcohol abuse, the ALJ in this case relied on the following. First, the intermittent nature of Plaintiff's psychological treatment, as well as the inconsistencies between the treatment notes (which indicate that her "increasing depression was associated with medical noncompliance and situational stressors involving bankruptcy, marriage issues and legal matters") and Plaintiff's testimony. Moreover, when Plaintiff restarted her mental health treatment "she was more concerned with her ability to obtain pain medications rather than psychiatric treatment" and when compliant with her mental health medication, the ALJ found that medical notes indicate increased functioning. "Overall, the

claimant's poor medication compliance even when prescription drugs were readily available to her, her reluctance to seek mental health treatment at the community provider, her continued use of alcohol and overuse of prescribed drugs, and her improvement when adhering to her medication regimen indicate that her symptoms are not as overwhelming as she alleged and can be effectively managed when she follows treatment advise." [AR 25-26]

On appeal, Plaintiff asserts that there is not substantial evidence separating the effects of her impairments from her substance abuse. As a result, she argues that the ALJ erred in applying the DAA regulations set out by the SAA and in ruling that her substance abuse was a contributing factor material to the disability determination.

Initially, I note Plaintiff asserts that the ALJ erred in that he failed to address evidence related to the periods of time in which she was not abusing drugs and alcohol. Plaintiff refers me to the 23 day period in March of 2004 when she asserts that she did not have any funds for prescription medication [AR 189] and a note in the records that she claims to have not consumed alcohol from August 3 through November 16, 2004. [AR 163] Plaintiff also relies upon her very short stays in the hospital, when she presumably was not abusing but then was often released with a low GAF score. I agree with the ALJ, however, that "[t]he evidence fails to establish any sustained period during which she was free of the abuse of alcohol and/or prescription drugs . . . " [AR 26] Contrary to Plaintiff's argument, the ALJ's determination of no established sustained period of abstention from substance abuse is amply supported by the medical evidence in the record. As such, I cannot say that his alleged failure to consider her functioning in times of abstinence constitutes error when the record does not reveal any such period.

Nonetheless, I agree with Plaintiff that the evidence relied upon by the ALJ is insufficient to support his determination that if she stopped her substance abuse, Plaintiff would have the RFC to perform unskilled work. First, the various reasons cited by the ALJ to discredit Plaintiff's claim that she was unable to work goes to her credibility, but does not serve as evidence to separate the effects of Plaintiff's mental impairments from the effects of her substance abuse. For example, Plaintiff's intermittent psychological treatment and medical noncompliance, as well as her situational stressors involving bankruptcy, marriage issues and legal matters, do not prove or disprove her ability to function without her substance abuse given her mental impairments. The same goes for her seeking out pain medications, rather than psychiatric treatment. To the extent that her records indicate increased functioning when she is compliant with her mental health medications, the lack of any substantial period of abusive abstinence – and the related ability to assess functioning during such a period – undercuts any short-term and minor improvement in mostly acute situations. *See generally Salazar v. Barnhart, supra*, 468 F.3d at 624 (noting that the only period of abstinence was a 40-day period after which the claimant was hospitalized for her mental problems). Moreover, I note that Plaintiff's GAF scores at the time of her discharge from various hospitalizations were primarily in the range of 41-50, which the DSM-IV describes as appropriate for serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

When reviewing the opinion of Dr. Garnand, the state agency examining psychiatrist, the ALJ found that Plaintiff had some restrictions related to her mood swings, panic and pain complaints, but that the "record does not support [Dr. Garnand's assessment of] ten moderate

16

functional limitations, not [sic] moderate limitations in activities of daily living, or in maintaining social functioning." [AR 26-27] As such, the ALJ gave Dr. Garnand's opinion only "partial weight" "given the excessive number of moderate limitations that are cited, although the conclusion that the claimant should be limited to unskilled work is supported, in light of her difficulties with concentration." [AR 27] To the extent that the ALJ relied upon the opinion of Dr. Garnand, as a state agency non-examining expert, his opinion is of limited value. "[F]indings of a nontreating physician based upon limited contact and examination are of suspect reliability." *McGoffin v. Barnhart, supra*, 288 F.3d at 1253 (*quoting Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)). Moreover, his opinion as to Plaintiff's ability to function was, as discussed, discounted or rejected by the ALJ and his conclusion related to Plaintiff's abilities to work when sober and complaint with her medical treatment is unsupported in the report or in the medical records.

Finally, there is no treating physician opinion in the record regarding Plaintiff's ability to work in the absence of her substance abuse. Dr. DeMallie, Plaintiff's treating psychiatrist, opined that Plaintiff's mental health complaints made her unable to complete a normal workday, perform at a consistent pace, or handle normal work stresses. However, as noted by the ALJ, her opinion was unsupported by any specific functional limitations and does not address the extent to which Plaintiff's substance dependence influences her ability to perform work-related mental tasks. [AR 27] But the SSA regulations require that the ALJ seek additional evidence or clarification from a medical source when their report "does not contain all the necessary information." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)(evaluating consistent but insufficient opinion evidence); *see also McGoffin v.*

17

*Barnhart, supra*, 288 F.3d at 1252.

In summary, the ALJ did not have substantial evidence of any sustained period of abusive substance abstention in order to assess Plaintiff's mental functioning while not abusing alcohol or drugs, nor did he have any relevant medical opinion, except the discounted opinion of the state agency non-examining expert. Instead, he relied upon his credibility determination as to Plaintiff's reported abilities and the fact that the records showed limited improvement when Plaintiff was compliant with treatment after very short periods of abstention. In short, such evidence does not rise to the level of substantial evidence, when the record is viewed as a whole, necessary to support the finding that Plaintiff's substance abuse is a contributing factor to her disability. *Salazar v. Barnhart, supra,* 468 F.3d at 624 (finding that opinions that did not assess whether the claimant's mental disorders were disabling in the absence of substance abuse and did not assess her abilities in an independent work environment did not rise to the level of substantial evidence); *McGoffin v. Barnhart, supra*, 288 F.3d at 1252 (finding that the assessment of a consulting physician, who examined the claimant only once, did not constitute substantial evidence that her mental disorders were not disabling absent her substance dependance). Rather, because the "psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol," this is a case in which the ALJ had to find that Plaintiff's substance abuse "is *not* a contributing factor material to the disability determination" pursuant to the SSA's DAA regulations. *Salazar v. Barnhart, supra,* 468 F.3d at 623 ("[t]here will be cases in which the evidence demonstrates multiple impairments, especially cases involving multiple mental impairments, where the [examiner] cannot project what limitations would remain if the individuals stopped using drugs/alcohol").

Plaintiff has asked for reversal and an award of benefits. Here, as in *Salazar v. Barnhart, supra*, 468 F.3d at 626, I "find it difficult to imagine that any medical or psychological professional would be able to prepare a retrospective analysis of [Plaintiff's] mental impairments" or the effect of her substance abuse on her ability to work prior to September 30, 2005. Therefore, I also "conclude that a remand for additional fact finding and a correct application of the law would serve no useful purpose." *Id.* Rather, given the available evidence, a remand for additional fact-finding and correct application of the SSA's DAA regulations in light of my rulings here would "merely delay the receipt of benefits." *Harris v. Secretary of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987).

Accordingly, IT IS ORDERED that the Commissioner's decision is REVERSED and REMANDED to the SSA Commissioner for an immediate AWARD of benefits.

Dated: July   16  , 2008 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE